**Zula SWANSON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 14231.**

United States Court of Appeals
Ninth Circuit.

June 27, 1955.

---

1. Southwestern Gas & Elec. Co. v. City of Gilmer, Texas, D.C., 123 F.Supp. 11.

2. Cf. Chappell v. Goltsman, 5 Cir., 186 F. 2d 215.

John C. Dunn, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., James M. Fitzgerald, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before HEALY, ORR and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

1. *Statement Of The Case.*

In 1951 Edgar Lewis was arrested on charges of violating the narcotic laws and was released under two appearance bonds in the total sum of $20,000 signed by the appellant as surety.

Since the conditions of the bonds are crucial in this case, they are given below in full [1] for each bond, all emphasis being supplied:

(1). "The condition of this bond is that * * * Lewis is to appear in the *United States Commissioner's Court* for Anchorage, Precinct * * * Alaska, in accordance with the direction of the United States *Commissioner's Court,* * * * with reference to the appearance before the *Court* in the case of 'United States * * * v. Edgar Lewis, File No. 1391.'

"And if Defendant fails to perform this condition, payment of the amount of the bond shall be due forthwith."

(2). "The condition of this bond is that * * * Lewis is to appear in the *Commissioner's Court* * * * for Alaska * * * at Anchorage * * * in accordance with all orders and directions of the *Court* relating to the appearance of the de-

---

1. Except for purely formal and noncontroversial matter.

fendant before *the Court* in the case of United States v. Edgar Lewis, File Number [left blank]; and if the defendant appears as ordered, then this bond is to be void, but if the defendant fails to perform this condition payment of the amount of the bond shall be due forthwith."

The meager transcript does not give the dates of the bonds, but the appellee's brief recites that the dates were August 28, 1951, for the bond numbered (1) and June 6, 1951, for the one numbered (2).

It should be observed that the only "court" referred to in either of these bonds is the "Commissioner's Court", which is not, of course, a real court at all.[2] Form 17, in the Appendix to the Federal Rules of Criminal Procedure brings this out in a footnote, which states "Change 'Court' to 'Commissioner' if necessary". 18 U.S.C.A. Federal Rules of Criminal Procedure, pages 46 and 620, footnotes 1 and 3 on each page.

The bonds, as given in the transcript, make no mention of the "United States District Court". Read in its context, "the Court" as used in the paragraphs quoted above can only mean what is loosely referred to as the "United States Commissioner's Court". We do not agree with the appellee's statement these are "continuing bonds" so as to carry over and apply to the *District Court*, or that "It is reasonable further to interpret the meaning of the word court in both bonds to mean [sic] the court having jurisdiction of the case at *any* particular stage of the proceedings". [Emphasis supplied.]

We continue the narrative of the proceedings below:

Thereafter, on October 29, 1951, the grand jury returned indictments against Lewis on these same charges.[3] It should be noted that, except for the arraignment and the setting of bail, no proceedings had been had before the United States Commissioner up to the time the indictments were returned.

On the same day that the grand jury acted, the *District Court* entered a minute order requiring the defendant to appear for arraignment in the *District Court*. The surety was notified of this order, which fixed the date of the arraignment as October 31, 1951.

Lewis did not appear for that arraignment, and the *District Court* entered an order forfeiting the appearance bonds. The surety's attorney objected, on the ground that the bonds were conditioned on appearance in the *Commissioner's Court*, and not the *District Court*.

The United States Attorney then requested the Commissioner to set a time for a preliminary hearing in the *Commissioner's Court*. It must be remembered that all this was done *after* indictment. The hearing was set for November 2, 1951.

The surety failed to produce the defendant at that hearing, and the *Commissioner* made an order forfeiting the bonds.

On November 20, 1951, the surety filed a motion in the *District Court* to set aside the previous forfeitures of the bonds, and to require the United States to show cause why the surety should not be exonerated.

On January 28, 1953, Lewis, after an "interception" in Chicago, and trial by jury at Anchorage, was sentenced to seventeen years.

On March 13, 1953, the District Court entered an oral decision to the effect that both the previous forfeitures were invalid, saying:

"The District Court's orders were invalid because at the time the District Court's orders were made there had been no breach of the bond; the order of this court was dated October 31, and defendant was not required to appear before the Commissioner before November 2nd. The Commissioner's order forfeiting the bonds is invalid because that

---

2. The section providing for their appointment and tenure refers to "United States Commissioners". 28 U.S.C.A. § 631.

3. Judge Folta's opinion gives the date as August 29, 1951. The transcript of record shows otherwise.

power does not lie with the United States Commissioner."

On April 13, 1953, the United States Attorney moved for forfeiture of the same bonds, and for judgment on such forfeiture.

Up to this point, all proceedings were before Judge Dimond. Before he could render a decision on the motion of April 13, 1953, he died.

On September 26, 1953, Judge Folta ruled that the bonds should be forfeited, and an order and judgment in favor of the appellee were docketed on October 5, 1953. The present appeal is from that judgment. The opinion below is found in 115 F.Supp. 528.

In a brief filed by the appellee in support of its motion for a continuance, it was stated:

> "Plaintiff [appellee] concedes that the 'preliminary hearing' at which the bonds in the instant case were declared forfeited by the Commissioner was not held for the purpose of determining whether or not there was sufficient ground to hold the defendant to the Grand Jury. The purpose of calling for the production of the defendant at that time was to forfeit the bonds."

We do not believe that an appellate court should condone such dubious dealings on the part of a litigant. As has been shown, the United States Attorney "requested the Commissioner to set a time for a *preliminary hearing* in the Commissioner's Court. This hearing was set for November 2, 1951." [Emphasis supplied.] Now we are told that the purpose was not to hold a preliminary hearing at all, but to forfeit the bonds.

In any event, a preliminary hearing would not have been appropriate, since an indictment had already been returned.

2. *The United States Commissioner Lacked Jurisdiction To Forfeit The Appearance Bonds.*

█ The order of the United States Commissioner of November 2, 1951, su-

pra, forfeiting the bonds after the surety failed to produce Lewis, was a nullity. A United States Commissioner is not empowered to forfeit a bail bond. Rule 46(f) (1) of the Federal Rules of Criminal Procedure provides:

> "(f) Forfeiture.
>
> "(1) Declaration. If there is a breach of condition of a bond, the district court shall declare a forfeiture of the bail."

Assuredly here is an appropriate occasion for the application of the principle of *Expressio unius est exclusio alterius.* The District Court *alone* may declare the forfeiture of a bail bond.

Alaska law is in accord with the Federal Rule. Section 66–17–51 of Alaska Compiled Laws Annotated 1949, volume 3, not cited by either party, reads as follows:

> "*Entry of nonappearance of defendant: Effect.* That if, without sufficient excuse, the defendant neglect or fail to appear for arraignment, or for trial or judgment, or upon any other occasion when his presence in court may be lawfully required, or to surrender himself in execution of the judgment, the *court* must direct the fact to be entered in its journal; and the undertaking of bail or the money deposited in lieu thereof, as the case may be, is thereupon forfeited." [Emphasis supplied.]

█ The text of the foregoing article itself, with its reference to "trial or judgment" and to "court", as well as an annotation to the article, both indicate that the *District Court* is meant. A United States Commissioner is not a "court". The annotation to the article is as follows:

> "That the District Court has power to declare or adjudge a forfeiture of bail appears *also* from the provisions in §§ 66–10–11 and 66–16–5. United States v. Manthei's Bondsmen, 1905, 2 Alaska 459." [Emphasis supplied.]

Even as to the forfeiture of a smaller bond, the District Court has exclusive jurisdiction. Where a bail bond of $1,000 or less is given in a criminal prosecution in a justice's court, it would seem that the government's action on the bond in case of the nonappearance of the accused should be brought in the District Court, in the absence of any statute authorizing a justice court to declare forfeiture of bail upon nonappearance of the defendant. United States v. Loussac, 1923, 7 Alaska 4, 11.

Careful analysis of Loussac in connection with the Alaska statutes, has convinced us that in that territory as elsewhere, United States Commissioners do not have the right to forfeit bail bonds.

Section 54-4-3 of A.C.L.A. provides in part:

"The commissioners shall be ex officio justices of the peace, recorders, and probate judges, and shall perform all the duties and exercise all the powers, civil and criminal, imposed or conferred on the United States commissioners by the general laws of the United States and the special laws applicable to Alaska."

Identical language is found in 48 U.S. C.A. § 108.

Read in connection with the Federal Rules of Criminal Procedure, supra, and the territorial statute just quoted, the following statement in Loussac seems to put the matter beyond cavil:

"It is difficult, then, by any construction of the Alaska Code, to find any authority for the exercise of the right of forfeiture of a bail bond by a justice of the peace." 7 Alaska at page 11.

And since, in Alaska, a United States commissioner's powers in criminal matters are those of an Alaskan justice of the peace, a commissioner is not authorized to declare the forfeiture of a bail bond.

In a recent case, this Court has emphasized the limited character of a United States Commissioner's jurisdiction. In Freeman v. United States, 9 Cir., 1946, 160 F.2d 69, 70, Judge Denman said:

"The commissioner's proceedings are quasi judicial in character. Go-Bart Importing Co. v. United States, 282 U.S. 344, 354, 51 S.Ct. 153, 75 L.Ed. 374. The issue before him is not guilt or innocence but probable cause for the arrest of the person charged. After the commissioner has issued his order for the arrest and commitment of the person complained of, *the proceeding before him is ended and his jurisdiction exhausted.*" [Emphasis supplied.]

Again, in Gray v. United States, 9 Cir., 1925, 9 F.2d 337, 338-339, it was said:

"Commissioners are neither judges nor courts, although at times they act in a quasi judicial capacity." [Cases cited.]

3. *The District Court Erred In Revoking The Bonds, Since The Defendant Was Not Summoned Before The Commissioner During The Period In Which The Latter Had Jurisdiction.*

As we have seen, a United States Commissioner loses jurisdiction after he binds the defendant over to the grand jury. A fortiori, the Commissioner in the instant case lost jurisdiction when the grand jury acted without waiting for the Commissioner to bind him over to await its action. *Thereafter,* as already noted, the United States Attorney requested the Commissioner to set a time for a *preliminary hearing.*

Apparently Judge Folta sensed that a "preliminary hearing" by a Commissioner would be anomalous after an indictment had been returned, for in his opinion he said, D.C., 115 F.Supp. at page 529:

"That part of the order of the Commissioner, therefore, specifying the purpose in the instant case is mere surplusage and must be disregarded. * * * I conclude that the Commissioner was authorized to order the principal to appear after indictment, without stating the purpose therefor."

This suggested evasion, we think, reveals the weakness of the position taken by the court below: Failure to state the real purpose of the hearing before the Commissioner—forfeiture of the two bonds—would not cure the jurisdictional vice that we have just noted; namely, the Commissioner's *lack of power* to forfeit a bond.

■ We advance, then, to the *District Court's* attempted forfeiture of the bonds. This, too, occurred, *after* indictment, and therefore *after* the Commissioner had lost jurisdiction. And it must be remembered that the bonds covered the defendant's "appearance" "in the United States Commissioner's Court". The condition of the bond did not even mention the United States District Court. The appellee's somewhat lame suggestion that "The answer may be that jurisdiction is concurrent on a return of an indictment both in the Commissioner's Court if the bond so provides and in the District Court" is not a valid one.

In support of its argument that "The District Court may have validly forfeited the appearance bonds on October 31, 1951", the appellee relies upon Davis v. State of South Carolina, 1883, 107 U.S. 597, 601, 2 S.Ct. 636, 27 L.Ed. 574.

There are at least three fallacies in the appellee's position in connection with Davis.

In the first place, the question is not a "jurisdictional" one. There is no question that a District Court has "jurisdiction" to declare the forfeiture of an appearance bond. The sole problem here is whether the court below exercised its undoubted jurisdiction *correctly* in the instant case.

■ In the second place, even if we assume that the question is a jurisdictional one, it should be remembered that "federal courts are courts of limited jurisdiction, and each of them should independently decide whether it does or does not have jurisdiction". Credit Bureau of San Diego v. Petrasich, 9 Cir., 1938, 97 F.2d 65, 67. This does not mean that a federal court should follow a suggestion that it "may" have jurisdiction: it must "decide" that "it does or does not have jurisdiction". And it should act only if its jurisdiction is plain.

Thirdly, and determinatively, the Davis case was a removal from a state court, and was in no way concerned with the action of a United States District Court with reference to a bond conditioned upon appearance before a Commissioner only. The following single sentence in the opinion of the Supreme Court at once distinguishes Davis from the case at bar.

"When, by virtue of the writ of *habeas corpus*, the prisoner was taken into the custody of the marshal, the jurisdiction of the circuit court of the United States of his person, and of the indictment against him, was completely vested, and that of the state courts ceased altogether." [107 U.S. 597, 2 S.Ct. 640].

Here, on the contrary, as we have seen, no State Court was involved, and the appellee suggests that both the "court" *a quo* and the court *ad quem* "may" have had jurisdiction after the return of the indictment. Davis simply is not in point.

4. *In Alaska, a Bail Bond Is Strictly Construed.*

In general, a bail bond in a Federal court has been defined as "a contract between the government, on the one side, and the principal and surety, on the other * * * Like other contracts, it must

be construed according to its express terms". Joelson v. United States, 3 Cir., 1923, 287 F. 106, 108.

In Alaska, however, bail bonds are strictly construed in favor of the surety. "Every intendment should be against a forfeiture, and no recovery should be had upon a bond, except upon a clear showing of liability under its conditions, including a showing that the government has suffered loss by reason of the failure of the obligors to live up to all its conditions, without reasonable excuse for such failure." United States v. Loussac, supra, 7 Alaska at page 13.

5. *Conclusion.*

In the instant case, the appellee was improvident in not exacting *continuing* bail from the prisoner. Had that been done, the surety would have been liable for the defendant's nonappearance at any stage of the proceedings.

A court, however, cannot pull chestnuts out of the fire for the benefit of unalert suitors. We must apply the law to the facts as we find them.

At no point in the proceedings during which the United States Commissioner had jurisdiction did the defendant violate the terms of the bonds. Any alleged breach came into being after the Commissioner's jurisdiction had terminated. And by their terms, the bonds covered nonappearances only before the Commissioner.

The appellee's position, then, can be resolved into a dilemma:

1. The United States Commissioner lacked jurisdiction to declare a forfeiture of the bonds at *any* stage of the proceedings.

2. The United States District Court *erred* in declaring the bonds forfeit, since they were conditioned upon an appearance before the Commissioner *only*, and the defendant did not violate their terms during the period *in which the Commissioner had jurisdiction.*

Accordingly, the judgment is reversed.