## TANN v. ALLIED VAN LINES, INC.

1. CARRIERS — POSSESSION — DELIVERY — NEGLIGENCE — BURDEN OF PROOF.

    A carrier who accepts goods in good condition for transportation and who fails to deliver the goods in good condition has the burden of proving freedom from negligence contributing to loss or damage, since the carrier has been in possession of the goods and best knows the facts.

2. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT.

    Findings of fact by the trial court in a nonjury case are not disturbed by the Court of Appeals unless the findings are clearly erroneous (GCR 1963, 517.1).

3. CARRIERS—NONDELIVERY—EXPLANATION—EVIDENCE.

    Evidence *held*, to support finding of liability by trial judge in nonjury action against carriers and warehouser for loss of books and china that such defendants were liable for value of goods which plaintiff had shipped but not received, there having been *no careful check made of the receival and delivery* of the goods and no satisfactory explanation made for the failure to redeliver.

4. DAMAGES—EVIDENCE.

    Mathematical precision as to damages is not required in situations of injury, where the very nature of the circumstances makes precision unattainable.

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur 2d, Carriers § 620.
[2] 5 Am Jur 2d, Appeal and Error § 839.
[3] 14 Am Jur 2d, Carriers § 625.
[4] 22 Am Jur 2d, Damages § 296 *et seq.*
[5] 22 Am Jur 2d, Damages § 46 *et seq.*
[6] 14 Am Jur 2d, Carriers § 639 *et seq.*
[7, 8] 22 Am Jur 2d, Damages § 192.
    14 Am Jur 2d, Carriers § 647.

5. Same—Breach of Contract.

    The award of damages for breach of contract is to provide the equivalent of performance of the bargain so as to place the plaintiff in the position he would have been in if the contract had been fulfilled.

6. Carriers — Damages — Evidence — Data Processor's Books — China.

    Trial court's evaluation of plaintiff shipper's loss of data processor's books, some of which were irreplaceable, and china, at $1,665.50, part of shipment insured as a whole for $15,000 for less than a quarter of the space in the transporting van, *held*, proper and reasonable in the light of testimony adduced.

7. Interest—Value of Goods Lost in Transit—Judgment.

    Allowance of interest prior to judgment on value of books and china lost in transit between shipper's home in Florida and delivery to his home in this State by defendant warehouser *held*, improper, where value was not ascertained until time of judgment (CLS 1961, § 600.6013).

8. Same—Judgment—Value of Goods Lost in Transit.

    Interest at 5% from time of judgment against carrier and warehouser is allowed upon value of goods lost in transit between Florida, and Michigan, where warehouser delivered goods to owner in this State (CL 1948, § 438.51; CLS 1961, § 600.6013).

Appeal from Common Pleas Court of Detroit; Stanczyk (Benjamin C.), J. Submitted Division 1 May 10, 1966, at Detroit. (Docket No. 1,315.) Decided December 8, 1966.

Declaration in assumpsit by Guy R. Tann against Allied Van Lines, Inc., a foreign corporation, Brandon Brothers, Inc., a foreign corporation, B. (Skippy) Blandford, Tanner Moving & Storage Co., a Michigan corporation, and Leonard Brothers Van & Storage Co., a Michigan corporation, for loss of goods in transit. Judgment for plaintiff. Defendants Allied, Brandon, and Leonard appeal. Affirmed as to liability for loss; reversed as to award of interest.

*Richard G. Chosid,* for plaintiff.

*Alexander, Buchanan & Conklin (Ralph W. Barbier, Jr.,* of counsel), for defendants Allied, Brandon and Leonard.

HOLBROOK, P. J.  The appellee, Guy R. Tann, contracted with Allied Van Lines at Satellite Beach, Florida, to move his personal effects from Florida to Detroit, Michigan.

The goods were hauled from Florida by Tanner Moving & Storage Co., and placed in the warehouse of Leonard Bros. Van & Storage Co., in Detroit, Michigan.  The goods were subsequently delivered by Leonard Bros. to the Tann residence in Detroit.

After delivery was made, Mr. Tann filed a claim for lost items on November 21, 1963.  Among the items said to be missing were 10 cartons of books and a box of china dinnerware.

This claim was denied by Allied Van Lines and suit was instituted by the appellee to recover damages for the lost items.

The trial court awarded the appellee $1,500 plus $60 sales tax for the books, $105.50 for the china, and $144 interest based on the sum of the 2 items above, giving a total judgment of $1,809.50 plus costs.

Appellants have posed 3 questions on appeal for this Court to consider; they are in italics and dealt with in proper order.

*Has the carrier overcome the presumption of negligence or fault which arose when the goods were not delivered and it was admitted that the goods were received by the carrier from the shipper?*

The appellant "concedes" that the burden shifts to the carrier to prove that he was free from negligence if there is a "showing" by the shipper that

the goods were delivered to the carrier in good condition and that the goods did not arrive or were damaged. *Douglas Shoe Co.* v. *Pere Marquette R. Co.* (1928), 241 Mich 297, 301.

They further concede that such a showing has been made by the appellee, with the exception that they do not admit the goods are missing but simply that appellee has so testified. However, they do acknowledge the burden of showing themselves free of negligence.

When a loss has occurred after goods have been delivered to the carrier, the burden of proof rests with the carrier, who is in possession of the goods and best knows the facts, to show that its negligence did not cause or contribute to the loss. *A. F. Young & Co.* v. *Grand Rapids & I. R. Co.* (1918), 201 Mich 39, 43. It is appellants' contention that this burden was sustained by an exhibit which indicated all the goods shipped by the Tanns were checked into the warehouse. However, two witnesses, employees of the warehouse, indicated they had not checked in the goods nor did they remember checking them out. Apparently, no one remembered *when* or *how* the goods were checked in or out.

The exhibit was found by the court to have been marked in column B (indicating goods received or delivered to the consignee) in a uniform manner, indicating the checks were made at the same time and not as the goods were removed from the truck.

There was no evidence introduced to contradict this conclusion; rather the evidence tends to support it. Mrs. Tann testified that the boxes seemed to be missing, but she didn't know which ones, since all the unpacking was not finished. She indicated this to the drivers and signed the receipt with the words "condition unknown."

A further consideration was the fact that the goods were stored in bulk and not in separate bins. It would thus be possible for goods to be "mixed" with another's, "left behind" at the warehouse, "given" to someone else, or "become lost" in some other way. These possibilities were not explained away to the satisfaction of the trial court.

The question is raised as to the sufficiency of the evidence in supporting the trial court's finding. We do not disturb findings of fact of the trial court unless they are clearly erroneous. GCR 1963, 517.1. The evidence supports the trial court's finding.

*Was the award of damages based on speculation?*

There was testimony introduced on behalf of the Tanns by an assistant manager of a well-known bookstore as to the value of the books lost. The competency of this witness is not questioned. An objection was made to testimony introduced to determine the value of certain books, the names or conditions of which were unknown. The purpose of the testimony was to indicate in a general way what the value of books of this nature would be. Many of the books were used by Mr. Tann in his job as a data processing consultant. Some of the books were irreplaceable.

In determining the value of the books, the court considered the fact that the stated value of all the goods was $15,000, for which the shipper paid insurance. The articles shipped occupied less than a quarter of the space in the transporting van, indicating the great value of the goods to the Tanns.

When the exact ascertainment of damages is impossible, the Michigan Supreme Court has said:

"We do not, * * * in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of the cir-

cumstances, precision is unattainable." *Stimac* v. *Wissman* (1955), 342 Mich 20, 28.

In *Gongola* v. *Yaksich* (1966), 3 Mich App 676, 680 the Court stated:

"The object of awarding damages in cases of breach of contract is to award a sum 'which is the equivalent of performance of the bargain  *  *  * to place the plaintiff in the position he would be in if the contract had been fulfilled.'" Citing Mc-Cormick, Damages, § 137, p 561.

The trial court attempted to "place the plaintiff in the position he would be in" if the contract had been completed as intended. The method utilized by the trial court in assessing damages was proper and reasonable.

*Should the trial court have awarded interest on the amount awarded to the shipper to run from the date of loss?*

In the instant case, appellees are entitled to recover interest of 5%* from the time of judgment. CLS 1961, § 600.6013 (Stat Ann 1962 Rev § 27A-.6013). *Great Lakes Steel Corp.* v. *Detroit, T. & I. R. Co.* (1947), 317 Mich 1. Also, see 1 Restatement, Contracts, § 337.

The award of interest by the trial court should have been made from the time of judgment until payment. *Great Lakes Steel Corp.* v. *Detroit, T. & I. R. Co., supra.*

Affirmed as to the determination of the carrier's liability and the value of the lost items.

Reversed as to the award of interest except as herein provided.

Costs to appellee.

McGregor and Quinn, JJ., concurred.

---

* CL 1948, § 438.51 (Stat Ann 1964 Rev § 19.11).