## WESTDALE COMPANY v. GIETZEN

1. BROKERS—REAL ESTATE—COMMISSION—CONTRACT.
   A real-estate broker who has a contract to sell, as a general rule, is entitled to the agreed commission when he produces a buyer ready, willing, and able to purchase.

2. CONTRACTS—WRITTEN CONTRACTS—CHANGES.
   A written agreement which is complete on its face, unambiguous in its terms, intended by the parties to be a complete integration of their agreement, and signed by the parties to be bound cannot be varied or changed without consent or subsequent agreement.

3. PARTNERSHIP—EVIDENCE—CONTRACTS.
   Defendant owner's testimony that he asked the real-estate-broker plaintiff why his wife wasn't supposed to sign a "buy-and-sell agreement" covering defendant's property and why another man was supposed to sign the agreement was sufficient to support a finding that the broker was alerted to

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Brokers §§ 157–243.
[2] 17 Am Jur 2d, Contracts §§ 459–462, 465–467, 469.
[3] 40 Am Jur, Partnership §§ 75, 76.
[4] 12 Am Jur 2d, Brokers §§ 185, 186, 221, 225.

the fact that the defendant and the other man, who was the defendant's subcontractor, were not partners and, thus, that the plaintiff was not entitled to deal with the subcontractor alone concerning the property.

4. BROKERS—REAL ESTATE—COMMISSION.

Plaintiff real-estate broker was not entitled to a commission for producing a buyer for defendant's property even though plaintiff produced a person who entered into a "buy-and-sell agreement" for the property subject to specifications, where the buyer later added specifications to the already existing specifications in the contract of sale and the new contract was signed not by the defendant owner of the property, but by a subcontractor of the defendant who had no authority to bind the defendant and where the defendant owner then sold to the same buyer in a separate transaction.

Appeal from Kent, John T. Letts, J. Submitted Division 3 December 11, 1970, at Grand Rapids. (Docket No. 8270.) Decided January 20, 1971.

Complaint by Westdale Company against Daniel E. Gietzen, Marinus Wiers, and Justin Zylstra for payment of earned sales commission. Defendant Gietzen dismissed with prejudice. Judgment for defendants. Plaintiff appeals. Affirmed.

*Russell & Ward,* for plaintiff.

*Vander Veen, Freihofer & Cook,* for defendant Wiers.

*Mohney, Norris, Goodrich & Titta,* for defendant Zylstra.

Before: FITZGERALD, P. J., and QUINN and McINTYRE,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

McIntyre, J.[*] Plaintiff real estate broker sued defendants for the payment of an earned sales commission. According to the plaintiff, Wiers and Zylstra, a partnership, executed a buy-and-sell agreement as sellers of a certain house and lot. Plaintiff argues that it produced Daniel Gietzen as a ready, able, and willing buyer and is entitled to payment under the agreement.

Prior to a predetermined closing date, November 10, 1967, defendant Wiers, without the consent or knowledge of the plaintiff, in a separate transaction sold the property to Gietzen. The commission has not been paid. Defendants deny that they were partners or that a partnership relation existed.

On September 14, 1967, Wiers, Zylstra, and Gietzen entered into a "buy-and-sell agreement" subject to specifications. On September 16, 1967, Gietzen signed the existing specifications but made substantial additions, increasing the cost. Zylstra, who signed the altered specifications, was not the owner. Wiers testified that he had not authorized the additions and, because of them, refused to honor plaintiff's brokerage contract and sold to Gietzen through a separate sale. The trial court, after making specific findings of fact, directed a judgment of no cause of action in favor of defendants. Plaintiff appeals.

The issues presented on appeal are whether there existed a binding partnership relation between Zylstra and Wiers and whether the sales commission contract of September 14, 1967 was valid and enforceable.

When a real estate broker contracts to sell, the general rule is that he is entitled to the agreed commission when he produces a buyer ready, willing, and able to purchase. *Barber v. Vernon* (1967), 8

Mich App 116; *Calka* v. *Donahoe* (1969), 20 Mich App 120.

In the present case, the brokerage agreement differs from an ordinary commission contract due to the relationship of the contracting parties and because the performance of the contract was subject to and controlled by certain specifications. Originally Zylstra sold the lot in question to Wiers. He testified that he was a builder and was constructing the house for owner Wiers, was to be paid on a per-foot completion basis, and was to be paid labor, materials and part of the lot when the house was sold. He made out the specifications in the buy and sell contract in the presence of Wiers and the Westdale agents. After Gietzen made the additions to the specifications, plaintiff's representatives stated he had to sign the agreement with the changed specifications in a hurry. He didn't know if he should, but was told that Wiers said it was okay to sign and that they had talked to Wiers on the phone. With this assurance, he signed the revised agreement.

Wiers testified that no such contact had been made and he did not learn of the changes until just before the proposed closing date. Wiers also testified:

"Q. What, if anything, do you remember telling to the real estate man about who owned this house on the night that you and Zylstra signed the specifications and the buy and sell agreement?

"A. That is the night I asked him how come my wife isn't supposed to sign and Judd (Zylstra) signs, and he just shrugged his shoulders. That is all that was said about it."

The above testimony, if believed, was sufficient to allow the trier of fact to decide that the plaintiff was alerted to the fact that no partnership existed and thus that it was not allowed to deal exclusively with

Zylstra. Plaintiff's agents testified that Zylstra introduced Wiers to them as a partner. This is denied by both Zylstra and Wiers. Credibility is for the trier of the fact.

A written agreement which is complete on its face, unambiguous in its terms, intended by the parties to be a complete integration of their agreement, and signed by the parties to be bound cannot be varied or changed without consent or subsequent agreement. The additions made to the standing specifications constituted a material variance inconsistent with the contract as intended and written.

The trial court, in a non-jury decision, made the following determination:

"The court finds that based on the facts and the law applicable thereto, no partnership existed between Zylstra and Wiers. The sole relationship was that of subcontractor and contractor respectively.

"Zylstra had no authority, either apparent or real, to sign any document on behalf of Wiers.

"The job specifications were an essential part of the 'buy-and-sell agreement' and there was no contract until there was a mutual agreement on that crucial matter. The assent of the subcontractor Zylstra could not bind the contractor and owner Wiers.

"There was no indication whatsoever that Zylstra had ever been authorized to sign for defendant Wiers in any transaction.

"The court finds that plaintiff's claim is without merit and, therefore, orders that a judgment be entered for the defendants of no cause for action, with costs to the defendants."

The action against Gietzen was dismissed. Zylstra is not liable for the commission because the court found he was not a partner either real or apparent and had no authority to bind either himself or Wiers. No personal liability attaches to Wiers

because of the unauthorized specifications additions.

In an action such as this, where the evidence is conflicting and contradictory, heard without a jury, it rests with the judge as trier of the facts to evaluate the testimony of each witness, to draw permissible inferences therefrom, and to decide the issues in the light of controlling legal principles. *Minkus* v. *Sarge* (1957), 348 Mich 415; *Scovill* v. *Ludwick* (1969), 20 Mich App 547; *Texaco, Inc.,* v. *Lumsden* (1970), 23 Mich App 30. Findings of fact will not be reversed unless clearly erroneous. GCR 1963, 517.1; *Tann* v. *Allied Van Lines, Inc.* (1966), 5 Mich App 309; *State Bank of Sandusky* v. *Boddy* (1969), 17 Mich App 466.

The record in the present case indicates that the trial court made reasonable findings of fact and correctly understood and applied prevailing contract law. The judgment, under the circumstances, is proper and is sustained.

Affirmed.

All concurred.