### MERGENTHALER LINOTYPE CO. v. TRANS-AMERICAN FREIGHT LINES, INC.

1. CARRIERS — COMMON — INITIAL — CONNECTING — COMMERCE — INTERSTATE — LIABILITY TO SHIPPER — STATUTES.

    An initial common carrier which receives and transports property in interstate commerce from one point to a point on another carrier's line is liable to the holder of the shipping receipt or bill of lading for any loss, damage or injury to the shipped property caused by it or by any other connecting common carrier to which such property may be delivered or over whose line or lines such property may pass (49 USCA § 20[11]).

2. CARRIERS — COMMON — INITIAL — CONNECTING — COMMERCE — INTERSTATE — DELIVERY TO CONSIGNEE — TERMINATION OF LIABILITY — STATUTES.

    The liabilities of an initial common carrier terminate upon delivery to a consignee; hence, defendant initial carrier was not liable for damages to shipped machinery caused by another common carrier to whom such machinery had been delivered, where that other carrier was a consignee and not a connecting carrier (49 USCA § 20[11]).

3. CARRIERS—EVIDENCE—SUFFICIENCY OF EVIDENCE—NONJURY CASE —FINDINGS OF TRIAL COURT.

    Trial court's finding that shipped machinery was damaged while in storage with the consignee was not clearly erroneous where a delivery receipt from that consignee established prima facie that it had received such machinery in apparently good condition and that consignee failed to produce any evidence to show that such machinery was broken when it was delivered by the initial carrier.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 14 Am Jur 2d, Carriers §§ 702–704, 710, 711.
[3] 14 Am Jur 2d, Carriers § 730.

Appeal from Kalamazoo, Lucien F. Sweet, J. Submitted Division 3 March 6, 1970, at Grand Rapids. (Docket No. 7,393.) Decided March 26, 1970.

Complaint by the Mergenthaler Linotype Company, a division of Eltra Corporation, a New York corporation, against Transamerican Freight Lines, Inc., a foreign corporation, and the Hastings Truck Company, Inc., a Michigan corporation, to recover for damages to shipped machinery. Judgment of no cause of action against defendant Transamerican Freight Lines. Judgment for plaintiff against defendant Hastings Truck Company. Defendant Hastings Truck Company appeals. Affirmed.

*Stratton, Wise, Early, Starbuck & Lennon* (*John T. Peters, Jr.,* of counsel), for plaintiff.

*Gemrick, Moser, Dombrowski, Bowser & Garvey* (*Russell A. Kries,* of counsel), for defendant Transamerican Freight Lines, Inc.

*Howard & Howard* (*John Oosterbaan,* of counsel), for defendant Hastings Truck Company, Inc.

Before: R. B. BURNS, P. J., and FITZGERALD and LEVIN, JJ.

FITZGERALD, J. Mergenthaler Linotype Company brought an action against Transamerican Freight Lines, Inc., and Hastings Truck Company, Inc., contending that a linotype machine was damaged by one or both of the defendants while being shipped from New York to Kalamazoo. Plaintiff had sold the machine to the Kalamazoo Gazette and arranged with Transamerican to ship it to Kalamazoo. Mer-

genthaler issued a nonnegotiable straight bill of lading to "the Kalamazoo Gazette c/o Hastings Truck Co., Inc." at 738 E. Walnut Street. Transamerican had no dealings with Hastings other than to deliver the machine to them. The Gazette made all arrangements with Hastings in accordance with a longstanding practice. Hastings had been employed to store the machine until the Gazette had room for it, at which time Hastings would deliver and install it.

Transamerican delivered the machine to the Hastings warehouse where an employee signed the bill of lading which stated that the property was in apparent good order. There was no visible damage to the shipping container which was then removed and the machine remained under a plastic cover until its delivery to the Gazette. During the trial, a Hastings employee testified that he noticed some damages to the skids that the machine was shipped on. He described the damage as being splintered wood that looked as if it had been inflicted by the forklift truck used by Hastings employees in unloading the machine from the Transamerican truck.

On June 1, 1966, Hastings loaded the machine on one of its trucks and moved it to the Gazette building which was less than a mile away. Upon arrival, the plastic cover was removed and the machine was placed on an elevator and moved to the installation site on the second floor where a Gazette employee noticed the damage.

There was some testimony that because of the presence of metal filings and the fact that broken parts appeared worn, the damage had been inflicted some time earlier. A judgment was eventually granted against Hastings Truck Company, Inc. A judgment of no cause of action was entered as to Transamerican Freight Lines, Inc.

Several issues are raised on this appeal, the first being the question of whether Transamerican is liable as the initial carrier on a showing that the machine was in good order when received by Transamerican and later appearing damaged when placed at its final destination.

During the course of the trial, plaintiff Mergenthaler moved for summary judgment against Transamerican on the grounds that there was no genuine issue as to any material fact. Defendant Hastings avers that it was error to have ruled against the motion. It is argued that under the facts of the instant case, Transamerican is liable under the Carmack Amendment to the Interstate Commerce Act, § 13(b) 54 Stat 919 (1940), 49 USCA § 20(11), which provides in part:

"Any common carrier, railroad, or transportation company subject to the provisions of this chapter receiving property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass."

During the trial, plaintiff contended that Transamerican, as the initial carrier, was liable under the act if it could be shown that the machine was undamaged when it was placed in the hands of the initial carrier and later appeared damaged when it was delivered at its destination. All of the parties readily agreed that the machine was undamaged when Transamerican took possession and was subsequently damaged between the aforementioned

time and when it was uncrated and placed in the Gazette building. Thus, it was on this basis that Mergenthaler claimed it was entitled to a summary judgment against Transamerican. The trial court was of the view that the Hastings Truck Company was not a connecting carrier as contemplated by the statute, *supra,* and hence Transamerican could not be held liable if the damage took place after Hastings took possession. The court ruled that when Transamerican made delivery to Hastings, this was delivery to the consignee on the bill of lading and damage was inflicted subsequent to delivery.

A complete review of applicable authorities indicates that Hastings was not a connecting carrier but rather an agent of the Kalamazoo Gazette and delivery to Hastings constituted delivery to the Gazette. The liabilities of a carrier terminate upon delivery to the consignee. *Republic Car Loading and Distributing Co. v. Missouri Pacific Railroad Co.* (CA 8, 1962), 302 F2d 381; *Continental Tanners, Inc. v. Gonic Footwear, Inc.* (1965), 106 NH 297 (210 A2d 480).

The Carmack Amendment does not impose liability on Transamerican, for the act applies to a carrier receiving goods "for transportation from a point in one state or territory or the District of Columbia to a point in another state, territory, District of Columbia . . . ." 49 USCA § 20(11). In the instant case, Transamerican received the machine at one point, New York, for transportation to another point, the Hastings Truck Company in Kalamazoo. Transamerican had no agreement for any further movement and it did not accept goods for shipment "to a point on another line." The Gazette had a longstanding arrangement with Hastings for the latter to receive, store, and install equip-

ment, which was totally separate and independent of Transamerican's agreement to ship the machine to Hastings. Therefore, here, as in *Rhoades, Incorporated* v. *United Air Lines, Incorporated* (CA3, 1965), 340 F2d 481, there was no connecting carrier relationship and the Carmack Amendment is not controlling.

We are also asked to consider whether the decision of the trial court that the machine was damaged while in the possession of the Hastings Truck Company was clearly erroneous and against a preponderance of the evidence. Under GCR 1963, 517.1, the findings of a trial court sitting without a jury are to be reversed only when they are clearly erroneous.

An examination of the record discloses the existence of a delivery receipt by Hastings' employee. This established *prima facie* that the machine was received in apparent good order. *Louisiana Southern Ry. Co.* v. *Anderson, Clayton & Co.* (CA 5, 1951), 191 F2d 784. Hastings failed to produce any evidence which would show that the machine was broken when it was delivered to them by Transamerican. The fact that no one noticed anything unusual about the machine until it was placed on the second floor of the Gazette building is evidence of the fact that it was damaged at a later rather than earlier point in time. The trial court also noted that Hastings had to load the machine onto a forklift, take it to the second floor and unload it, while Transamerican had only to load it once.

While there was some contradictory evidence, such as the testimony that the broken parts of the machine had been rubbing together for some time, indicating that the break was an old one, the court did have sound evidence before it from which it could logically conclude that the machine was broken

while in the possession of Hastings. In light of this evidence, we cannot say that the trial court's findings were clearly erroneous. *Tann* v. *Allied Van Lines, Inc.* (1965), 5 Mich App 309.

Affirmed. Costs to appellees.

All concurred.